UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| LISA GAIL GRAYBEAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:16-CV-560-CCS |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 12]. Now before the Court is the Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 10 & 11] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 13 & 14]. Lisa Gail Graybeal ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will **GRANT IN PART** the Plaintiff's motion, and **DENY** the Commissioner's motion.

**I.   PROCEDURAL HISTORY**

On February 8, 2013, the Plaintiff filed an application for disability insurance benefits and supplemental security income benefits pursuant to Title II and XVI of the Social Security Act, 42 U.S.C. §§ 401-403, 1381-1385, claiming a period of disability that began on May 1, 2011. [Tr.

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this case.

194-202]. After her application was denied initially and upon reconsideration, the Plaintiff requested a hearing before an ALJ. [Tr. 149]. A hearing was held on June 19, 2015. [Tr. 39-67]. On September 4, 2015, the ALJ found that the Plaintiff was not disabled. [Tr. 20-38]. The Appeals Council denied the Plaintiff's request for review [Tr. 1-6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, the Plaintiff filed a Complaint with this Court on September 15, 2016, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.     ALJ FINDGINS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> 2. The claimant has not engaged in substantial gainful activity since May 1, 2011, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).
>
> 3. The claimant has the following severe impairments: fibromyalgia (although not diagnosed by a specialist); hypertension[;] degenerative disc disease of the lumbar spine; obesity; and depression (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can lift/carry 10 pounds frequently, 20 pounds occasionally; sit/stand/walk 6 hours out of an 8-hour day; and would

2

need a sit/stand option for 30-45 minutes. She could occasionally climb ramps, stairs, balance, and stoop, kneel, and crouch; and never climb ladders, ropes, or scaffolds, or crawl. She would need to avoid concentrated exposure to hazards. She would need to have only simple, routine, tasks, in that she could apply common sense understanding to carry out oral, written and diagrammatic instructions. She would need low stress jobs, with few changes in the work setting and no executive level function.

6. The claimant is unable to perform any past relevant work. (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 30, 1971 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. Thus, the undersigned finds that the claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 25-33].

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the

procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. ANALYSIS

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant will only be considered disabled if:

4

his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Id.* The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work

available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

In the present case, the Plaintiff contends that the ALJ did not properly weigh the medical opinion of treating physician Janet McNeil, M.D., and further erred in his consideration of the opinions offered by non-treating, non-examining state agency physicians at the initial and reconsideration levels. [Doc. 11 at 18-22]. The Plaintiff additionally argues that new medical records exists that warrant remand pursuant to sentence six of 42 U.S.C. § 405(g). [*Id.* at 22-23]. The Court will address the Plaintiff's allegations of error in turn.

### A. Medical Opinions

Dr. McNeil has been the Plaintiff's treating physician since March 26, 2007. The Plaintiff receives treatment primarily for back pain, fibromyalgia, and fatigue. During the Plaintiff's initial exam, she completed a fibromyalgia questionnaire, wherein she indicated that her pain was 8/10, fatigue 10/10, stiffness 7/10, headaches 3/10, sleep disturbance 10/10, bowel disturbance, 5/10, and depression 6/10. [Tr. 447]. On examination, the Plaintiff demonstrated 18/18 positive tender points, joint tenderness in the elbows, waist, and hands, and reduced range of motion with pain in the lower back. [Tr. 445]. The Plaintiff was diagnosed with fibromyalgia, fatigue, insomnia, low back pain, anxiety, and arthritis, not otherwise specified. [Tr. 442].

Dr. McNeil continued to treat the Plaintiff on a monthly basis through 2015, consistently noting 18/18 positive tender points, fatigue, "brain fog," anxiety, and shoulder and back pain with reduced range of motion. [Tr. 349-451, 475-513, 599-627]. Based on treatment received by orthopedic physician, J. McDonald Burkhart, M.D., Dr. McNeil agreed that the Plaintiff's pain

and numbness in her thigh was consistent with meralgia paresthetica.[2] [Tr. 621, 655]. Sitting increased pain and numbness. [Tr. 621, 612].

Imaging studies include an August 2013 x-ray of the lumbar spine revealing mild spondylosis [Tr. 622], a September 2013 MRI of the lumbar spine indicating degenerative disc disease at T11-12 and facet joint arthropathy at L4-5 and L5-S-1 [Tr. 655], and a May 2015 MRI of the thoracic spine and pelvis demonstrating mildly prominent thoracic kyphosis and mild degenerative changes and facet joint arthritis at L5-S1 [Tr. 661, 713].

On June 29, 2015, Dr. McNeil completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)." [Tr. 719-24]. Therein, Dr. McNeil opined that the Plaintiff could lift and carry up to 20 pounds occasionally but carrying more than 10 pounds would cause pain. [Tr. 719]. Dr. McNeil explained that the Plaintiff's ability to lift and carry was affected by pain and weakness in her shoulders and upper arms, noting reduced range of motion of the shoulders bilaterally and significant weakness on examination. [*Id.*]. Moreover, Dr. McNeil explained that the Plaintiff has pain in her upper back, exhibited by tenderness on examination. [*Id.*]. As to the Plaintiff's ability to stand, walk, and sit, Dr. McNeil opined that the Plaintiff could sit for four to five hours but only 20-30 minutes uninterrupted, and she could stand and walk for one to two hours but only 15 minutes uninterrupted. [Tr. 720]. Dr. McNeil related that the Plaintiff becomes very stiff and has increased pain with prolong sitting. [*Id.*]. Similarly, the Plaintiff experiences increased pain, numbness, and weakness of her left leg if she stands or walks for long

---

[2] "Meralgia paresthetica is a condition characterized by tingling, numbness and burning pain in you outer thigh. The cause of meralgia paresthetica is compression of the nerve that supplies sensation to the skin surface of your thigh." *Mayo Clinic*, https://www.mayoclinic.org/diseases-conditions/meralgia-paresthetica/symptoms-causes/syc-20355635 (last updated Feb. 23, 2017).

periods of time due to meralgia paresthetica. [*Id.*]. The Plaintiff must also lay down four times a day for 15-30 minutes to manage her pain, weakness, and fatigue. [Tr. 720].

As to the use of her hands and feet, Dr. McNeil opined that the Plaintiff could reach overhead on an occasional basis (but was limited with height), and could occasionally reach, handle, finger, and push or pull. [Tr. 721]. Dr. McNeil noted pain, weakness, and reduced range of motion of the shoulders as limiting the Plaintiff's use of her hands. [*Id.*]. The Plaintiff could also occasionally operate foot controls with her right foot but never with her left foot due to numbness. [*Id.*]. Dr. McNeil explained that using the right foot contributed to increased back pain. [*Id*]. With regard to postural activities, the Plaintiff could never climb stairs, ramps, ladders, or scaffolds, balance, stoop, kneel, crouch, or crawl. [Tr. 722]. Dr. McNeil attributed the postural limitations to the Plaintiff sometimes falling as a result of pain, numbness, and weakness in her lower left extremities, as well as fatigue and back pain. [*Id.*]. Dr. McNeil also assessed environmental restrictions, opining that the Plaintiff could never be exposed to unprotected heights, moving mechanical parts, pulmonary irritants, extreme cold or heat, or vibrations, but could occasionally be exposed to humidity and wetness and frequently operate a motor vehicle. [Tr. 723].

Elaborating on the specific medical and clinical findings supporting her opinion, Dr. McNeil observed that the Plaintiff suffers from pain caused by fibromyalgia, specifically noting the presence of 18 positive tender points, severe fatigue, poor memory, and worsening brain fog, as well as chronic neck pain. [*Id.*]. Dr. McNeil attributed the foregoing limitations as having been present since 2010. [Tr. 724].

The ALJ assigned "little weight" to Dr. McNeil's opinion, finding "[h]er restrictions were too severe and she has not referred the claimant to a rheumatologist for management of the

8

fibromyalgia . . ." [Tr. 30]. The ALJ continued, "instead [Dr. McNeil] has chose to treat the claimant with narcotic medications, even in light of fairly benign diagnostic studies." [*Id.*]. The ALJ emphasized that the Plaintiff has not been diagnosed or treated by a rheumatologist or other specialist and concluded that nothing in the record supported "such severe restrictions" as those opined by Dr. McNeil. [Tr. 31].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. §§ 404.1527(c)(2), 416.927(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The Plaintiff argues the ALJ did not provide good reason for rejecting Dr. McNeil's

opinion and failed to balance all of the regulator factors, including the length, frequency, nature, and extent of the treating relationship. [Doc. 11 at 19]. The Plaintiff protests that nothing within the regulations or rulings promulgated by the Commissioner require a treating physician, such as Dr. McNeil, to refer a patient to a rheumatologist for fibromyalgia management. [*Id.* at 19-21]. Although Dr. McNeil is not a rheumatologist, the Plaintiff contends that her opinion was entitled to greater deference due to the nature of the treating relationship. [*Id.*]. The Court agrees.

Social Security Ruling 12-2p, 2012 WL 3104869, at *1 (July 25, 2012) sets forth the requisite criteria for diagnosing fibromyalgia and evaluating the impairment in disability claims. Importantly, "[a] licensed physician (a medical or osteopathic doctor) is the only acceptable medical source who can provide" evidence establishing fibromyalgia as a medical determinable impairment. *Id.* at *2. Nowhere does the ruling require that a claimant be diagnosed or treated by a rheumatologist or other specialist. In the present matter, there is no dispute whether the Plaintiff's has a medical determinable impairment of fibromyalgia as the ALJ concluded at step two that the Plaintiff's fibromyalgia was a severe impairment. [Tr. 25]. However, the ALJ appears to discount Dr. McNeil's opinion primarily on the premise that she was not a rheumatologist and the Plaintiff was not referred to one for treatment. To be sure, the ALJ observed at step two that the Plaintiff's fibromyalgia was a severe impairment "although not diagnosed by a specialist." [*Id.*]. In weighing Dr. McNeil's opinion in the RFC portion of the decision, the ALJ repeatedly observed that the Plaintiff was "not referred . . . to a rheumatologist for management of the fibromyalgia" and the Plaintiff "has not seen a rheumatologist to date." [Tr. 30-31].

The ALJ's decision suggests, and is indeed the position of the Commissioner [Doc. 14 at 12], that the failure to be treated by a rheumatologist supports a finding that the Plaintiff's fibromyalgia is not as limiting as alleged. Although the specialization of a treating source is an

10

appropriate factor to consider under the regulations, the significance of this factor must be weighed against the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, and the opinion's consistency with the record as a whole. Moreover, "[w]hen a person alleges [fibromyalgia], longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of the impairment." Social Security Ruling 12-2p, 2012 WL 3104869 at *3.

The Commissioner cites to *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) in which case the Seventh Circuit observed that "[f]ibromyalgia is a rheumatic disease and the relevant specialist is a rheumatologist." This Court agrees with the Seventh Circuit's observation but disagrees with the Commissioner's reliance on the case for the proposition that failure to seek treatment by a rheumatologist "suggests that Plaintiff's condition was not as severe as opined by Dr. McNeil and undermines her opinion." [Doc. 14 at 12]. Dr. McNeil is an "acceptable medical source" whose eight year treating relationship affords "longitudinal records" concnering the Plaintiff's diagnosis, treatment, examination findings, and symptoms of fibromyalgia. *See* Soc. Sec. Rul. 12-2p, 2012 WL 3104869 at *2. Dr. McNeil's treatment records consistently document positive tender point testing, fatigue, memory problems, and anxiety, symptoms commonly associated with fibromyalgia. *See Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 862 (6th Cir. 2011) (observing that disability claims based on fibromyalgia "are related to the symptoms associated with the condition—including complaints of pain, stiffness, fatigue, and inability to concentrate—rather than the underlying condition itself); *see also* Soc. Sec. Rul. 12-2p, 2012 WL 3104869 at *3 (noting common symptoms of fibromyalgia include fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel

syndrome). Therefore, while a rheumatologist may be the preferred treatment provider for fibromyalgia patients, nothing within the ALJ's decision suggests that Dr. McNeil's treatment and examination findings were contrary to medically acceptable practices in diagnosing and treating fibromyalgia or that the limitations assessed were unsupported by Dr. McNeil's treatment notes. Nor is there any basis for discounting Dr. McNeil's opinions merely because the Plaintiff was not referred to a rheumatologist.

In addition to noting that the Plaintiff was not treated by a rheumatologist, the only other reason cited by the ALJ for rejecting Dr. McNeil's opinion is that Dr. McNeil "instead choose to treat the claimant with narcotic medications, even in light of fairly benign diagnostic studies." [Tr. 30]. Although the ALJ's rational may undermine the severity of some of the other impairments for which Dr. McNeil rendered treatment, "in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245 (6th Cir. 2007); *see Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988) (noting that fibromyalgia "patients manifest normal muscle strength and neurological reactions and have a full range of motion").

Further problematic, as argued by the Plaintiff [Doc. 11 at 18-19], is the ALJ's consideration of the state agency physicians' opinions in this case. The ALJ gave "little weight" to the opinion of the state agency physician at the initial level, Sannagai Brown, M.D., who opined limitations consistent with sedentary work. [Tr. 30, 75-76, 88-89]. Dr. Brown found fibromyalgia was the only severe impairment which, according to the ALJ, "should not limit [the Plaintiff] walking as much." [Tr. 30]. The ALJ gave no explanation for disagreeing with Dr. Brown's opinion. It is insufficient to discount a medical opinion without some reasoned explanation,

12

supported by substantial evidence, for departing from a conclusion reached by a trained medical provider. *See Isaacs v. Astrue*, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) ("The residual functional capacity opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because '[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms.'") (quoting *Deskin v. Comm'r Soc. Sec.*, 605 F.Supp.2d 908, 912 (N.D. Ohio 2008)).

The ALJ then gave "significant weight" to the opinion of the state agency physician at the reconsideration level, Charles Settle, M.D., who opined limitations consistent with the Plaintiff's RFC for light work except that the ALJ added a sit/stand limitation and additional environmental restrictions. [Tr. 30, 103-06, 118-21]. The ALJ likewise provided no discussion or explanation why the opinion offered by Dr. Settle was entitled to more deference than the opinion of Dr. Brown and, more importantly, the opinion of Dr. McNeil. "Unless a treating source's opinion is given controlling weight, the administrative law judge *must explain* in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist." 20 C.F.R. §§ 404.1527(e)(3)(ii) and 416.927(e)(3)(ii) (emphasis added); *see* Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *2 (July 2, 1996) (stating the same). The ALJ's conclusory assignment of significant weight to Dr. Settle's opinion fails to satisfy the standard promulgated by the Commissioner and constitutes error. *See Wilson*, 378 F.3d at 545 ("It is an elemental principle of administrative law that agencies are bound to follow their own regulations.").

Accordingly, the Court finds that the ALJ did not satisfy the good reason requirement for rejecting Dr. McNeil's opinion, an error that was further compounded by the ALJ's failure to explain the assignment of weight to the opinions of the state agency physicians, Dr. Brown and

Dr. Settles, and explain the basis for the weight given to each individually and in relationship to each other. Therefore, the Court will order that the case be remanded to the ALJ to reweigh the opinions of Dr. McNeil, Dr. Brown, and Dr. Settles.

### B. New Evidence

The Plaintiff has submitted medical records from a rheumatologist that post-dates the ALJ's September 4, 2015 decision. [Doc. 11-1 at 1-8]. The Plaintiff moves for a sentence six remand, arguing that these later generated medical records are "new" and "material" evidence and that "good cause" exist for not presenting this evidence during the administrative proceedings. [Docs. 11 at 22-23, 15 at 3-4]. The Commissioner argues that the Plaintiff has not met her burden in establishing that the medical evidence warrants a sentence six remand. [Doc. 14 at 15-20]. The Court finds that it need not reach the merits of this issue as it has already determined that a remand is appropriate in this case. Upon remand, the ALJ may consider all relevant evidence, including the rheumatology records submitted by the Plaintiff.

## V. CONCLUSION

Based on the foregoing, the Plaintiff's Motion for Summary Judgment [**Doc. 10**] will be **GRANTED IN PART**, and the Commissioner's Motion for Summary Judgment [**Doc. 13**] will be **DENIED**. This case will be **REMANDED** to the Social Security Administration with instructions that the ALJ reweigh the opinions of Dr. McNeil, Dr. Brown, and Dr. Settles, and determine and explain what weight, if any, the rheumatology records submitted should be given.

ORDER ACCORDINGLY.

                                        s/ C. Clifford Shirley, Jr.
                                        United States Magistrate Judge